## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY BROWN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports, | |
| Defendant. | |

Plaintiff Timothy Brown ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Vital Pharmaceuticals, Inc., d/b/a VPX Sports ("Defendant" or "VPX"), a Florida corporation. Plaintiff makes the following allegations based on information and belief, except as to the allegations specifically pertaining to himself which are based on personal knowledge.

## INTRODUCTION

1.      Creatine is one of the most popular sports dietary supplements on the market, with more than $400 million in annual sales.[1] Creatine has been shown to improve exercise performance and play a role in preventing or reducing serious injuries, enhancing rehabilitation from injuries, and aids athletes in tolerating heavy training loads.[2]

2.      Likewise, creatine is increasingly associated with brain health and cognitive

---

[1] Jessica Butts et al., "Creatine Use in Sports," 10 *Sports Health* at 31-34 (Jan-Feb 2018) [https://dx.doi.org/10.1177%2F1941738117737248]. (last accessed February 11, 2022).
[2] Thomas Buford et al., "International Society of Sports Nutrition position stand: creatine supplementation and exercise," 4 *J. Intl Soc Sports Nutr.* 6 (2007) [https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2048496/]. (last accessed February 11, 2022).

performance. There is evidence in scientific literature that if creatine is able to successfully permeate the blood-brain barrier (BBB), it can promote brain health and improve cognitive function. Creatine has also been progressively tested in neurodegenerative diseases, such as Parkinson's and Huntington's disease.

3.      It is, therefore, no surprise that products with creatine, which has been shown to boost exercise performance, promote greater fitness gains, positively effect a consumer's physical health, and potentially aid in cognitive performance, are popular and widely available in brick-and-mortar stores and online across the United States.[3] These products come in many forms, including beverages, capsules, and powders.

4.      Defendant VPX is an American company that hypes its products as the healthiest energy drink on the market. VPX manufactures, markets, distributes, and sells a variety of products, including its BANG® "performance-enhancing beverage" product line (the "BANG® products" or the "Products"). VPX sells BANG® products by deceiving the public about the Products' ingredients.

5.      The marquee ingredient in the BANG® products is "SUPER CREATINE," which Defendant touts as a "performance ingredient" that "contributed in part to Bang's rise in prominence" and created a so-called "cult-like craze".

6.      Contrary to the labeling of "SUPER CREATINE" on BANG® products, the Products do not contain any creatine at all. Rather, what Defendant calls "SUPER CREATINE" is really Creatyl L-leucine, which is a fundamentally different molecule than creatine, **is not creatine**, and **does not have the benefits of creatine**. Creatyl L-leucine is an entirely new

---

[3] Cindy Crawford et al., "A Public Health Issue: Dietary Supplements Promoted for Brain Health and Cognitive Performance," 26 *J. Altern Complement Med..* at 265-272 (Apr 2020) [https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7153641/ (last accessed February 11, 2022).

ingredient developed by VPX. It is also incapable of having any of the physiological effects of creatine. Simply put, the term and name "SUPER CREATINE" is false and misleading.

7.      Nonetheless, Defendant touts the presence of so-called "SUPER CREATINE" in capital letters and a bold font placed around the top lip of each BANG® can. Further, Defendant labels "SUPER CREATINE" as a "performance ingredient" on the Products' packaging.

8.      Defendant reinforces these false claims by including the phrase "POTENT BRAIN AND BODY FUEL" in all capital letters, on the front and center of the Product, immediately below the product name BANG®, and has defined this phrase as its "trademarked tagline" and part of its "trade dress." In fact, Defendant has stated that one of the reasons it labels the Product as providing "POTENT BRAIN AND BODY FUEL" is because of "SUPER CREATINE."

9.      Defendant has engaged in false and misleading claims to gain profits at the expense of the consumers, who Defendant knows are regularly seeking to improve their physical and/or neurological health.

10.     Defendant is well aware that creatine is a popular dietary supplement believed to have beneficial effects for exercise performance, building muscle mass, brain health, and cognitive functioning. However, the **Products contain no creatine at all**.

11.     Nonetheless, Defendant has capitalized on this trend, and has engaged in a uniform nationwide marketing campaign to convince consumers that the Products contain "SUPER CREATINE," when they in fact have no creatine at all and are entirely incapable of providing the benefits of creatine.

12.     To further support the validity of its false and deceptive product claims, the

3

BANG® website references multiple "university studies."[4] All of these studies were funded, at least in part, by VPX. Further, the VPX-sponsored "university studies" do not provide any discernable scientific evidence that Creatyl-l-Leucine can provide any performance benefit in the body or in the brain. In fact, there are no peer-reviewed studies in the scientific literature that support positive effects of Creatyl-l-Leucine in the brain or in skeletal muscle.

13.     To accompany this deception and give the false impression of medical and scientific support for the BANG® products' supposed benefits, VPX holds itself out as a "pharmaceutical" company. Indeed, Jack Owoc, CEO and founder of VPX, who is also VPX's "Chief Scientific Officer" and primary pitchman, claims that he purposefully designed the company logo to resemble the "Rx" symbol associated with pharmaceutical drugs:



14.     As Owoc explained, "This is precisely why the acronym VP(X) actually stands for Vital Pharmaceuticals with the X appearing lower than the VP similar to how it appears in RX."[5]

15.     Despite this marketing and labeling scheme, VPX is not a pharmaceutical company and its founder, Jack Owoc, is merely a former high school science teacher, and not a chemist, pharmacist, scientist or doctor.

16.     Defendant's false and deceptive advertising campaign is being carried out to the

---

[4] 'VPX UNIVERSITY STUDIES." Bang Energy. [https://bangenergy.com/vpx-university-studies/ (last accessed February 11, 2022.)
[5] https://bangenergy.com/about/ (last accessed February 11, 2022).

detriment of the consuming public. As described herein, "SUPER CREATINE" is *not* creatine, and the BANG® products contain no creatine, and do not confer any health benefits. Nonetheless, Defendant intends to deceive, and has deceived, consumers into believing that BANG® products contain creatine.

17.     Plaintiff and members of the classes purchased the Products and paid a premium for Defendant's Products over comparable products that were not promoted with the misrepresentations at issue here.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from the Defendant.

19.     This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts with the state of New York and purposefully availed itself, and continues to avail itself, of the jurisdiction of this New York through the privilege of conducting its business ventures in the state of New York, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant does business throughout this district, and Plaintiff lives and made his purchase of the Product in this district.

## PARTIES

21.     Plaintiff Timothy Brown ("Plaintiff Brown" or "Mr. Brown") is a natural person

and a citizen of New York, residing in Staten Island. Plaintiff Brown purchased BANG® products periodically in 2020 and 2021, with the last purchase being in late 2021.  Mr. Brown was in New York when he purchased the BANG® products.  He also purchased at least one BANG® product in New Jersey between 2020 and 2021.  Mr. Brown typically purchased the products at various gas stations. Prior to his purchase, Mr. Brown saw and read the product packaging, and relied on the representation and warranty that the product contained the ingredients represented on the can and would provide health and wellness benefits. Prior to purchasing, Mr. Brown also saw, read, and relied on the following statements:

A.      "SUPER CREATINE."

B.      "POTENT BRAIN AND BODY FUEL"

C.      "Power up with BANG®'s potent brain & body-rocking fuel: Creatine, Caffeine (stated), CoQ10 & BCAAs (Branched Chain Amino Acids)."

22.      Plaintiff Brown was deceived by the above misrepresentations into believing that BANG® products contained creatine, and that the Products had sufficient amounts of creatine to provide physiological effects.

23.      Plaintiff Brown purchased the Products at a substantial price premium and would not have bought the Products, or paid the same amount for the Products, had he known that the labeling and marketing he relied on was false, misleading, deceptive, or unfair.

24.      Plaintiff Brown would purchase the Products in the future if they contain sufficient quantities of creatine to provide physiological effects associated with the creatine. Mr. Brown regularly visits places where Defendant's Products are sold. However, he has no way to be certain whether Defendant's ingredient representations are true when he sees the Products on the store shelves.

25.      Defendant Vital Pharmaceuticals, Inc. ("VPX") is a Florida corporation with its principal place of business at 1600 North Park Drive, Weston, Florida 33326. VPX produces, markets, and distributes various nutritional supplement products through VPX's website and in retail stores across the United States and New York, including the Products.

26.      Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## COMMON FACTUAL ALLEGATIONS

**A.      The BANG® Products' Claims**

27.      Defendant manufactures, distributes, advertises, and sells BANG® products, which for all relevant purposes are identical, apart from the flavors, which include: Cotton Candy, Lemon Drop, Root Beer, Blue Razz, Sour Heads, Peach Mango, Star Blast, Power Punch, Champagne, Black Cherry Vanilla, Pina Colada, Purple Guava Pear, Citrus Twist, Purple Haze, Cherry Blade Lemonade, and Rainbow Unicorn.

28.      Defendant also manufactures, distributes, advertises, and sells caffeine-free versions of BANG® products which for all relevant purposes are identical, apart from the flavors, which include: Sour Heads, Cotton Candy, Black Cherry Vanilla, Purple Guava Pear, and Cherry Blade Vanilla.

29.      At all relevant times: Defendant has marketed the Products in a consistent and uniform manner relating to ingredients. Defendant sells the Products on its website and through various distributors and retailers.

30.      At all times during at least the last four years, Defendant advertised, marketed,

labeled and sold the Products as containing the ingredient "SUPER CREATINE."

31.    Defendant labels and advertises the Products in a manner that leads reasonable consumers to believe that the Products contain creatine.

32.    Defendant also labels and advertises the Products in a manner that leads reasonable consumers to believe that they fuel the brain and body and that, unlike the competition, it is a reputable company that accurately represents the Products' ingredients.

33.    In particular, Defendant has consistently conveyed the uniform, deceptive representation to consumers that the Products contain creatine through the prominent placement of the words "SUPER CREATINE" on the top lip of each of the Products can, in bold capitalized letters, as shown below:




34.     Further, the front and back of every Product states that the Product contains "POTENT BRAIN AND BODY ROCKING FUEL," and the back label states "Power up with BANG®'s potent brain & body rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs (Branched Chain Amino Acids)," as shown below:

 

35.     These uniform claims have been made by Defendant and repeated across a variety of media including the Products' label, website, and online promotional materials, and at the point-of-purchase, where they cannot be missed by consumers.

**B.     The BANG® Products Do Not Contain Creatine**

36.     In truth, Defendant's claim that the Products contain "SUPER CREATINE" is false, misleading, and deceptive because the Products do not contain creatine, and are incapable

of providing the purported benefits of creatine.

37.     Creatine is a popular supplement that has been shown to improve physical performance, including physical adaptions to exercise and power activities. Creatine is widely used by consumers to improve anerobic exercise performance and muscle morphology. That is why creatine products have garnered more than $400 million in annual sales across the United States.

38.     Likewise, it is well known that brain health and cognitive performance are issues of concern to consumers of all ages and are important public health issues. In 2016, dietary supplements claiming to benefit the brain generated $3 billion in global sales.[6] Brain health supplements are forecast to increase to $5.8 billion in global sales by 2023.[7] Backed by scientific evidence, creatine can promote brain health and improve cognitive performance if able to permeate the blood-brain barrier (BBB).

39.     It is, therefore, no surprise that products promising to provide a positive effect on the brain and body are widely available in stores across the United States.[8] These products come in many forms, including beverages, capsules, and powders. Beverages with these health and wellness claims have especially gained mainstream status in the United States, particularly as consumers are experiencing pill fatigue and are looking for alternative ways to fuel their bodies and brains.

40.     Defendant has capitalized on this trend, and has engaged in a uniform, nationwide marketing campaign to convince consumers that the Products contain creatine

---

[6] "The Real Deal on Brain Health Supplements: GCBH Recommendations on Vitamins, Minerals, and Other Dietary Supplements," *Global Council on Brain Health* at 2 (2019) [https://doi.org/10.26419/pia.00094.001] (last accessed February 11, 2022)
[7] *Id.* p. 2.
[8] Crawford et al., *supra* note 3.

through the use of their novel ingredient "SUPER CREATINE," when they have no creatine at all, and that the Products can help consumers improve their brain and body health, when the Products are incapable of providing these benefits.

41.     Independent testing confirms that the Products do not contain the represented ingredients in accordance with the Defendant's representations. True and correct copies of the samples of testing for "creatine," commissioned by Plaintiff's attorneys, are attached hereto as "Exhibit A" and "Exhibit B."

42.     The SUPER CREATINE molecule that is found in currently marketed BANG® products is Creatyl-l-Leucine, which consists of creatine covalently bound to l-leucine. This synthetic process changes the chemistry of the creatine molecule to another chemical entity. That is, SUPER CREATINE is not creatine and thus the Products indisputably do not contain creatine and cannot provide the physical benefits associated with creatine.

43.     For example, the United States Food and Drug Administration ("FDA") has explained that Picamilon is not a recognized dietary ingredient because it is "a unique chemical entity synthesized from the dietary ingredients niacin and gamma-aminobutyric."[9]

44.     This is consistent with the properties of Creatyl-l-Leucine, a synthesized combination of two ingredients creating a unique compound not found in nature.

45.     In fact, as shown below, the chemical structures of creatine and Creatyl-l-Leucine are clearly distinct:

---

[9] See https://content.next.westlaw.com/w-001
0342?__lrTS=20211204150451875&transitionType=Default&contextData=(sc.Default)&firstPage=true (last accessed February 11, 2022.)

**Creatine**



**Creatyl-l-Leucine**

46.     No valid scientific-evidence exists to support Defendant's claim that SUPER CREATINE (i.e. creatyl-l-leucine) either exists or provided beneficial effects on the brain or on the body. In fact, the results of a recent study from the Max Rady College of Medicine at the University of Manitoba show that "creatyl-l-leucine supplementation resulted in no bioaccumulation of either creatyl-l-leucine or creatine in tissue."[10] Bioaccumulation of creatine, also known as "creatine loading," is the buildup of creatine when consumed regularly. Creatine is able to have a positive physiological effect on the body and brain in this stage.[11]

---

[10] Robin P. da Silva, "The Dietary Supplement Creatyl-L-Leucine Does Not Bioaccumulate in Muscle, Brain or Plasma and Is Not a Significant Bioavailable Source of Creatine," 14 *Nutrients* at 701 (Feb 2022) [https://doi.org/10.3390/nu14030701] (last accessed February 11, 2022).
[11] 'Creatine Monohydrate: Benefits, Side Effects, Dosafes & FAQ." Muscle & Strength. [https://www.muscleandstrength.com/expert-guides/creatine-monohydrate] (last accessed February 11, 2022.)

47.     This SUPER CREATINE is merely a new ingredient, concocted by Defendant, which is not creatine and has no proven impact on the human body. In other words, there is no such this as SUPER CREATINE. That is simply a term Defendant puts on the Products' labeling, because based on those health and wellness claims, a reasonable customer would believe that the Products contain creatine.

**C.      The Impact of Defendant's Deceptive and Misleading Conduct**

48.     Defendant intentionally and deceptively included the words "SUPER CREATINE" at the top lip of the Products, in bold and capitalized letters where it cannot be missed by consumers, notwithstanding the fact that the Products do not contain creatine. A reasonable consumer would be misled by this representation and would reasonably believe that the Products contain creatine and provide the purported benefits of creatine.

49.     Consumers lack the meaningful ability to test or independently ascertain or verify the genuineness of product claims of normal, everyday consumer products, especially at the point-of-sale. Consumers would not know the true nature of the ingredients (or lack thereof) merely by reading the ingredients label. Moreover, reasonable consumers, like Plaintiff Brown, are not expected or required to do research to confirm or debunk Defendant's prominent claims, representations, and warranties that the Products contain creatine. Reasonable consumers must therefore rely on consumer product companies, such as Defendant, to honestly represent their Products and their attributes on the Products' labels.

50.     At all relevant times, Defendant directed the above-referenced Products' labels, statements, claims and innuendo, including that the Products contained creatine and provided the claimed benefits of creatine, to consumers in general and Class Members in particular, as evidenced by their eventual purchases of the Products.

51.     Plaintiff and Class Members reasonably relied on Defendant's Products' labels, statements, claims and innuendo in deciding to purchase the Products and were thereby deceived.

52.     As a result of Defendant's misconduct, Defendant was able to sell the Products to hundreds of thousands of consumers throughout the United States—including Plaintiff Brown and putative Class Members in New York—and to realize sizeable profits.

53.     The purpose of Defendant's scheme is to stimulate sales and enhance Defendant's profits.

54.     As the manufacturer, marketer, advertiser, distributor and/or sellers of the Products, Defendant possesses specialized knowledge regarding the Products and the content of the ingredients contained therein. In other words, Defendant knows exactly what is – and is not – contained in the Products.

55.     Defendant knew or should have known, but failed to disclose, that the Products do not actually contain creatine and are incapable of providing the claimed benefits of creatine, as labeled and/or marketed by Defendant.

56.     Plaintiff and putative Class Members were, in fact, misled by Defendant's labeling, representations and marketing of the Products.

57.     Defendant's representations on the BANG® product labels that the Products contain "SUPER CREATINE" have a tendency or capacity to deceive or confuse reasonable consumers because the Products do not contain creatine.

58.     Defendant's representations on the BANG® product labels that state "Power up with BANG®'s potent brain & body-rocking fuel: Creatine […]" have a tendency or capacity or deceive or confuse reasonable consumers because the Products do not contain creatine.

59.     Defendant intended for consumers to rely upon the representations on the Products' labels, and reasonable consumers did, in fact, so rely. These representations are often the only source of information consumers can use to make decisions concerning whether to buy and use such Products.

60.     Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular."

61.     Defendant's false, deceptive and misleading label statements are unlawful under State Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

62.     Further, as explained above, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to be misbranded—False or misleading label [i]f its labeling is false or misleading in any particular."

63.     The New York Food, Drug and Cosmetic Act, New York has expressly adopted the federal food labeling requirements and has stated "[a] food shall be deemed misbranded in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. §343)[.]" Public Health Law §71.05(d). Thus, a violation of federal food labeling laws is an independent violation of New York law and actionable as such.

64.     If Defendant had disclosed to Plaintiff and putative Class Members that the Products *do not contain any creatine at all*, and that the Products do not provide the claimed benefits of creatine, Plaintiff and putative Class Members would not have purchased the Products or they would have paid less for the Products.

**D.      Defendant's Fraudulent Conduct Regarding the BANG® Products' Misrepresentations**

65.     Rule 9(b) of the Federal Rules of Civil Procedure provided that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

66.     **WHO:** Defendant, VPX, made material misrepresentations and/or omissions of fact in its labeling and marketing by representing that the Products contain creatine and provide the physiological benefits of creatine.

67.     **WHAT:** VPX's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products contain creatine. VPX omitted from Plaintiff and Class Members that the Products do not contain creatine and therefore cannot provide the physiological benefits of creatine. VPX knew or should have known this information is material to the reasonable consumer and impacts the purchasing decision. Yet, Defendant has and continues to represent that the Products contain creatine and provide the physiological effects of creatine, and yet it includes the creatine claims on the Products packaging and marketing.

68.     **WHEN:** VPX made material misrepresentations and/or omissions detailed herein continuously throughout the applicable Class periods

69.     **WHERE**: VPX's material misrepresentations and/or omissions were made on the labeling and packaging of the Products, which are sold nationwide and are visible to the consumer on the front of the labeling and packaging of the Products at the point of sale in every transaction. The Products are sold in brick-and-mortar stores and online store nationwide.

70.     **HOW:** VPX made written misrepresentations right on the front label of the

Products that the Products contained creatine and could provide the physiological effects of creatine, even though the Products do not contain creatine. As such, Defendant's creatine representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that the Products do not contain creatine. And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's creatine representations and omissions before purchasing the Products.

71.    **WHY:** VPX engaged in the material misrepresentations and/or omissions detailed herein for the express purposed of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for the Products. As such, VPX profited by selling the Products to at least thousands of consumers nationwide

## CLASS ACTION ALLEGATIONS

72.    Pursuant to Rules 23(b)(2), (b)(3) and, as applicable, (c)(4), of the Federal Rules of Civil Procedure, Plaintiff seek to represent a Nationwide class defined as follows:

> **Nationwide Class: During the fullest period allowed by law, all persons in the United States who purchased the BANG® Products.**

73.    Excluded from the Class are Defendant, and VPX affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to amend the Class definition as appropriate.

74.    Plaintiff Brown also seeks to represent the following New York Subclass:

> **New York Subclass: During the fullest period allowed by law, all persons in New York who purchased the BANG® Products.**

75.    Excluded from the New York Subclass are Defendant, VPX affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

76.     Plaintiff reserves the right to amend the Class definitions or add a Class if discovery and/or further investigation reveal that the Class definitions should be narrowed, expanded or otherwise modified.

77.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

78.     **Numerosity – Federal Rule of Civil Procedure 23(a)(a)**: The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in at least the thousands to hundreds of thousands. The number of members of the Classes is presently unknown to Plaintiff but may be ascertained from Defendant's books and records.  Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

79.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**: Common questions of law and fact exist as to all members of each of the Classes and predominate over questions affecting only individual members of the Class. Such common questions of law or fact include, but are not limited to, the following:

   a.     Whether Defendant misrepresented material facts concerning the Products on the label of every BANG® product;

   b.     Whether Defendant's conduct was unlawful; unfair; fraudulent and/or deceptive;

   c.     Whether Defendant was unjustly enriched when selling the mislabeled BANG® products to Plaintiff and Class Members;

   d.     Whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper

measure of their damages; and

e.  Whether Plaintiff and the classes are entitled to injunctive, declaratory, or other equitable relief.

80.  Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce on behalf of himself and the other Members of the proposed Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

81.  **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that is unique to Plaintiff or to any particular Members of the Classes.

82.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Members of the Classes he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

83.  **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of

inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

84.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct.  Even if Members of the Classes could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

**Unjust Enrichment**
(On Behalf of the Nationwide Class)

85.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

86.    Plaintiff Brown brings this count against Defendant on behalf of himself and the Nationwide Class.

87.     Plaintiff Brown and the other Members of the Nationwide Class conferred benefits on Defendant by purchasing the Products based on Defendant's creatine claims

88.     Defendant received the benefits to the detriment of Plaintiff and the other Members of the Nationwide Class because Plaintiff and the other Members of the Nationwide Class purchased mislabeled Products that are not what they bargained for and that did not provide the of the promised benefits of creatine as advertised by Defendant.

89.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other Members of the Nationwide Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other Members of the Nationwide Class, because they would have not purchased the Products had they known the true facts.

90.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other Members of the Nationwide Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other Members of the Nationwide Class for their unjust enrichment, as ordered by the Court.

## COUNT II

### Fraud
(On Behalf of the Nationwide and/or the New York Subclass)

91.     Plaintiff incorporates by reference all the foregoing paragraphs of this Complaint as if fully stated herein.

92.     Plaintiff brings this count on behalf of himself, the Nationwide Class and/or the New York Subclass against Defendant, VPX.

93.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging

fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

a) **WHO:** Defendant, VPX, made material misrepresentations and/or omissions of fact in its labeling and marketing by representing that the Products contain creatine and can provide the physiological benefits of creatine.

b) **WHAT:** VPX's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products contain creatine. VPX omitted from Plaintiff and Class Members that the Products do not contain creatine and therefore cannot provide the physiological benefits of creatine. VPX knew or should have known this information is material to the reasonable consumer and impacts the purchasing decision. Yet, Defendant has and continues to represent that the Products contain creatine and provide the physiological effects of creatine, and yet it includes the creatine claims on the Products packaging and marketing.

c) **WHEN:** VPX made material misrepresentations and/or omissions detailed herein continuously throughout the applicable Class periods.

d) **WHERE:** VPX's material misrepresentations and/or omissions were made on the labeling and packaging of the Products, which are sold nationwide and are visible to the consumer on the front of the labeling and

packaging of the Products at the point of sale in every transaction. The Products are sold in brick-and-mortar stores and online store nationwide.

e) **HOW:** VPX made written misrepresentations right on the front label of the Products that the Products contained creatine and could provide the physiological effects of creatine, even though the Products do not contain creatine. As such, Defendant's creatine representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that the Products do not contain creatine. And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's creatine representations and omissions before purchasing the Products.

f) **WHY:** VPX engaged in the material misrepresentations and/or omissions detailed herein for the express purposed of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for the Products. As such, VPX profited by selling the Products to at least thousands of consumers nationwide.

94.     As alleged herein, VPX made these material representations and omissions regarding the Creatine Claims in order to induce Plaintiff and Class Members to purchase the Products.

95.     As alleged in detail herein, VPX knew the misrepresentations and omissions regarding the Products were false and misleading but nevertheless made such representations and omissions through the marketing, advertising, and on the Products' labeling. In reliance on these representations and omissions, Plaintiff and Class Members were induced to, and did, pay

monies to purchase the Products.

96.     Had Plaintiff and the Class known the truth about the Products, they would not have purchased the Products or would not have paid a price premium for the Products.

97.     As a proximate result of the fraudulent conduct of VPX, Plaintiff and Class Members paid monies to VPX, through its regular retail sales channels, to which VPX is not entitled, and have been damaged in an amount to be proven at trial.

<u>**COUNT III**</u>

**Violation of the New York Deceptive Trade Practices Act,**
**New York Gen. Bus. Law § 349, *et seq.***
(On behalf of the New York Subclass)

98.     Plaintiff incorporates by reference all of the foregoing paragraphs of Complaint as if fully stated herein.

99.     By reason of the acts set forth above, Defendant has been and is engaged in deceptive acts or practices in the conduct of a business, trade, or commerce in violation of New York's General Business Law § 349.

100.    Defendant engaged in unfair and/or deceptive conduct by, *inter alia*, making the representations that the Products contain creatine.

101.    The public is likely to be damaged because of Defendant's deceptive trade practices or acts. Specifically, Defendant's false, deceptive, or misleading statements implicate the health and safety of those consumers deceived by Defendant.

102.    Defendant directs its conduct at consumers, as Defendant's false, deceptive, or misleading statements are contained in marketing targeted toward consumers, including social media and retail product packaging. As such, Defendant's conduct as alleged herein is consumer oriented.

103.    Defendant's deceptive acts are likely to mislead a reasonable consumer acting

reasonably under the circumstances.

104.    Defendant's deceptive acts affect the public interest in the state of New York because, upon information and belief, consumers located in New York have purchased Defendant's Products in reliance on Defendant's false, deceptive, or misleading statements.

105.    As a result of Defendant's use of employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the New York Subclass have sustained damages in an amount to be proven at trial.

## COUNT IV

**Violation of the New York Deceptive Trade Practice Act,**
**New York Gen. Bus. Law § 350,** *et seq.*
(On behalf of the New York Subclass)

106.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

107.    Defendant has made material, false or misleading statements or representations of fact about the Products. Specifically, Defendant has literally, impliedly, or by necessary implication made the representations that the Products contain creatine, which is not true.

108.    Defendant's acts constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of any service in the state of New York in violation of New York's General Business Law § 350.

109.    The public is likely to be damaged because of Defendant's deceptive trade practices or acts. Specifically, Defendant's false or misleading statements implicate the health and safety of those consumers deceived by Defendant.

110.    As such, Defendant's conduct as alleged herein is consumer oriented.

111.    As a result of Defendant's material, false or misleading statements or representations of fact about the Products, Plaintiff and each of the other Members of the New

York Subclass have sustained damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated members of the Class(es), pray for relief and judgment, including entry of an order, as follows:

(a) Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

(b) Directing that Defendant bear the costs of any notice sent to the Class(es);

(c) Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class(es);

(d) A jury trial and damages according to proof;

(e) Awarding actual damages to Plaintiff and the Class;

(f) Awarding Plaintiff and members of the Class(es) statutory damages, as provided by the applicable state consumer protection statutes invoked above;

(g) Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

(h) Awarding Punitive damages;

(i) Civil penalties, prejudgment interest and punitive damages as permitted by law; and

(j) Ordering such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial of the claims asserted in this Complaint.

Dated: February 11, 2022                             Respectfully submitted,

                                                     **SHUB LAW FIRM LLC**

                                                     By: */s/ Jonathan Shub*
                                                     Jonathan Shub (NYS Bar # 4747739)

Kevin Laukaitis*
134 Kings Highway East, 2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
Fax: (856) 210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Nick Suciu III*
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Rachel Soffin*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 864-8541
rsoffin@milberg.com


L. Timothy Fisher*
Joel D. Smith*
Yeremey O. Krivoshey*
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        jsmith@bursor.com
        ykrivoshey@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan*
2901 W. Coast Highway, Suite 200
Newport Beach, California 92663
Telephone: (949)270-2798
Facsimile: (949)209-0303
E-Mail: rnathan@nathanlawpractice.com

*Pro Hac Vice Application
Forthcoming

*Attorneys for Plaintiff and the
Proposed Class*

# Exhibit A



**∷ eurofins** | **Eurofins Scientific Inc. (Petaluma)**

---

Eurofins Scientific Inc. (Petaluma)

1365 Redwood Way
Petaluma, CA 7570
+1 707 792 7300
ESACClientServices@EurofinsUS.com

---

Eurofins Frontier Global Services, Inc.

Maricris Dela Rosa
11720 N Creek Pkwy N Ste. 400 SUITE 400
Bothell, WA 98011

## Analytical Report
AR-18-KK-013320-01

**Client Code:** KK0001484
**PO Number:** 8H1001

**Received On:** 08/30/2018
**Reported On:** 09/10/2018

---

**Eurofins Sample Code:**740-2018-08300044
**Client Sample Code:**
**Sample Description:**    Sample ID #502389 080719
TP2 0652 Bang Cherry
Blade Lemonade(473ml),
Liquid, Lab ID #8H01001-01

**Sample Registration Date:** 08/30/2018
**Condition Upon Receipt:**   acceptable
**Sample Reference:**

| K0010 - Creatine and creatinine (HPLC) | Reference Internal Method | Analysis Completed 08/30/2018 |
|---|---|---|

| Parameter | Result |
|---|---|
| Creatine Nitrate | ND |
| Creatine Monohydrate | ND |
| ND = None Detected. | |
| Creatine HCl | ND |
| Creatine | ND |
| Creatinine | ND |
| ND = None Detected. | |

Respectfully Submitted,

*[signature]*

Michael Moeszinger
Associate Scientist Group Leader

---

Results shown in this report relate solely to the item submitted for analysis. | Any opinions/interpretations expressed on this report are given independent of the laboratory's scope of accreditation. | All results are reported on an "As Received" basis unless otherwise stated. | Reports shall not be reproduced except in full without written permission of Eurofins Scientific, Inc. | All work done in accordance with Eurofins General Terms and Conditions of Sale: www.eurofinsus.com/terms_and_conditions.pdf | √ Indicates a subcontract test to a different lab. Lab(s) are listed at end of the report. For further details about the performing labs please contact your customer service contact at Eurofins. Measurement of uncertainty can be obtained upon request.

# Exhibit B



# Advanced Botanical Consulting & Testing, Inc.

1169 Warner Ave. Tustin, CA 92780, Phone: (714) 259-0384 Fax: (714) 259-0385

**Nathan Law Practice**
600W. Broadway, Suite 700
San Diego, CA 92101
Tel: (619) 272-7014
Fax:

ATTN:  Reuben Nathan
PO#:

Client Sample ID: Bang Power Punch
Lot#: UCP code # 10764 86361, best by: 032719 TP2 2242
Lab Number: 242357

Received Date:  09/17/2018

Report Date:    09/18/2018

| Analyses | Results |
| --- | --- |
| CoQ10 (HPLC) | 94.5mg/can |
| Creatine (HPLC) | ND<50mg/can |
| Leucine (HPLC) | 47.3mg/can |
| Isoleucine (HPLC) | 141.9mg/can |
| Valine (HPLC) | 47.3mg/can |
| Amount per can (based on label) | 473mg |

Method:  ALC151A, ALC528A, ALC190A

Analyzed by:_____        Approved by:_____
                    Chemist                                    Wendi Wang, PhD, President



# Advanced Botanical Consulting & Testing, Inc.

1169 Warner Ave. Tustin, CA 92780, Phone: (714) 259-0384 Fax: (714) 259-0385

Nathan Law Practice
600W. Broadway, Suite 700
San Diego, CA 92101
Tel: (619) 272-7014
Fax:

ATTN:  Reuben Nathan
PO#:

Client Sample ID: Bang Star Blast                     Received Date:  09/17/2018
Lot#:    UPC code# 10764 86365, Best by 021219TP2 4516
Lab Number: 242358                                    Report Date:    09/18/2018

| Analyses | Results |
|---|---|
| CoQ10 (HPLC) | 94. 6mg/can |
| Creatine (HPLC) | N.D.<50mg/can |
| Leucine (HPLC) | 47. 2mg/can |
| Isoleucine (HPLC) | 141. 9mg/can |
| Valine (HPLC) | 47. 3mg/can |
| Amount per can (based on label) | 473ml |

Method:  ALC151A, ALC528A, ALC190A

Analyzed by:_____          Approved by: _____
                    Chemist                                          Wendi Wang, PhD, President